IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

Portland Division

VICTOR TILLINGHAST,                                3:10-CV-1113-MA

       Plaintiff,                              OPINION AND ORDER

v.

MICHAEL ASTRUE,
Commissioner of Social
Security,

       Defendant.

MERRILL SCHNEIDER
Schneider Law Offices
P.O. Box 14490
Portland, OR 97293
(503) 255-9092

    Attorneys for Plaintiff

DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003

1  - OPINION AND ORDER

BENJAMIN J. GROEBNER
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 Fifth Avenue, Suite 2900 MS/901
Seattle, WA  98104-7075
(206) 615-2531

    Attorneys for Defendant

MARSH, Judge.

     Plaintiff seeks judicial review of the Commissioner's final decision denying his December 1, 2006, applications for disability insurance benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 and supplemental security income benefits (SSI) under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-83f.

     Plaintiff claims he has been disabled since April 2, 2002, because of head and neck tremors, cervical degenerative disc disease, and arthritis in his knees and arms.  His claim was denied initially and on reconsideration.  On January 13, 2010, the Administrative Law Judge (ALJ) held an evidentiary hearing and on February 4, 2010, issued a Notice of Decision finding plaintiff has severe impairments related to degenerative cervical disc disease and osteoarthritis of the right knee that limit him to occasional overhead reaching, climbing, kneeling, crouching and crawling.  The impairments, however, do not prevent him from performing his past relevant work as a data entry clerk or mail clerk.

2 - OPINION AND ORDER

On July 20, 2010, the Appeals Council denied plaintiff's request for review.  The ALJ's decision, therefore, is the Commissioner's final decision for purposes of judicial review.

Plaintiff seeks an Order reversing the Commissioner's final decision and remanding the case for further proceedings that would include a neuropsychological evaluation of plaintiff.

For the following reasons, the final decision of the Commissioner is **REMANDED** for further proceedings as set forth below.

## THE ALJ'S FINDINGS

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled.  Bowen v. Yuckert, 482 U.S.137, 140 (1987).  See also 20 C.F.R. § 416.920. Plaintiff bears the burden of proof at Steps One through Four. See Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  Each step is potentially dispositive.

At Step One, the ALJ found plaintiff had not engaged in substantial gainful activity since April 2, 2002.

At Step Two, the ALJ found plaintiff has severe impairments related to cervical degenerative disc disease and osteoarthritis in his right knee.  20 C.F.R. § 404.1520© and 404.920(c)(an impairment or combination of impairments is severe if it significantly limits an individual's physical or mental ability to do basic work activities).

3 - OPINION AND ORDER

At Step Three, the ALJ found plaintiff's impairments do not meet or equal any listed impairment.  He has the residual functional capacity to perform light work limited to occasional overhead reaching, climbing, kneeling, crouching and crawling.

At Step Four, the ALJ found plaintiff is able to perform his past relevant work as a data entry clerk or mail clerk.

Accordingly, the ALJ found plaintiff is not disabled.

## **LEGAL STANDARDS**

The initial burden of proof rests on the claimant to establish disability.  Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996).  The claimant must show an inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C § 423(d)(1)(A).

The Commissioner's decision must be affirmed if the ALJ applied proper legal standards and made findings supported by substantial evidence in the entire record.  42 U.S.C. § 405(g). "Substantial evidence" is "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

4 – OPINION AND ORDER

The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. <u>Martinez v. Heckler</u>, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld, however, even if the "evidence is susceptible to more than one rational interpretation." <u>Andrews</u>, 53 F.3d at 1039-40.

The Commissioner bears the burden of developing the record. <u>DeLorme v. Sullivan</u>, 924 F.2d 841, 849 (9th Cir. 1991). The duty to further develop the record, however, is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. <u>Mayes v. Massanari</u>, 276 F.3d 453, 459-60 (9th Cir. 2001).

The decision whether to remand for further proceedings or for the immediate payment of benefits is within the discretion of the court. <u>Harman v. Apfel</u>, 211 F.3d 1172, 1178 (9th Cir.), <u>cert</u>. <u>denied</u>, 121 S. Ct. 628 (2000). "If additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded." <u>Lewin v. Schweiker</u>, 654 F.2d 631, 635 (9th Cir. 1981).

## <u>ISSUES ON REVIEW</u>

Plaintiff contends the ALJ erred in failing (1) to give clear and convincing reasons for rejecting plaintiff's testimony; (2) to give a germane reason for not considering the written lay

evidence offered by his wife; (3) to give specific and legitimate reasons for rejecting medical opinions of examining physicians; (4) to find plaintiff's head tremors are a severe impairment; (5) to require plaintiff to undergo a neuropsychological examination; and (6) to make sufficient factual findings regarding plaintiff's ability to perform his past relevant work.

### PLAINTIFF'S TESTIMONY/EVIDENCE

Plaintiff's evidence is drawn from his hearing testimony and work/earnings history reports.

### Education.

Plaintiff was 54 years old on the date of the hearing. He has a B.A. degree in liberal arts, humanities, and theology, and a certificate in operating small business machines. He has taken a correspondence course in accounting.

### Work History.

Plaintiff's last employment was from 1995 to April 2002 as a senior operations specialist for a bank, in which he processed wire transfers and performed computerized data entry and retrieval. He lost his job at the bank because of stress caused by "head and neck tremoring" that impaired concentration while he was working on a computer. He also had difficulty answering the telephone while performing computer tasks. He was "content," however, if he was only required to perform data entry tasks.

From 1990 to 1993, plaintiff worked as a data entry/billing clerk for a downtown parking company.  He quit after he was transferred to a parking attendant position as punishment for telephoning his wife during his break.  Other employees routinely did the same thing without such a consequence.

Plaintiff has also worked as a mail clerk for a law firm and data checker for a manufacturing firm.

**Medical Issues.**

Plaintiff began suffering involuntary and constant head tremors (tics) shortly before he left his job at Wells Fargo in 2002.  They have occurred regularly since then.  He also has slight hand tremors that are unrelated to his head tremors.  His hands sometimes freeze up.

Plaintiff has arthritis with pain in both knees, but more so in the right knee.

Plaintiff was prescribed crutches and a wheelchair in August 2005 to help him walk.

**Daily Activities.**

Plaintiff's daily activities include listening to the radio, watching videos, playing cards, reading, and checking e-mails. He sleeps well and is able to manage his personal care needs.  He prepares his own meals, does the laundry, and performs routine household chores such as washing the dishes, as well as vacuuming for 15 minutes.  He shops for groceries twice a month.

Plaintiff avoids heavy lifting and lengthy walks.  He has difficulty squatting, kneeling, and climbing stairs, or any other activity requiring him to use his knees.  He no longer swims, runs, hikes, or goes camping, and he uses crutches or a wheelchair if his knees hurt.

Plaintiff asserts that his tremors interfere with his concentration, and his memory in the weeks before the hearing was occasionally impaired.  He is able to follow concise detailed instructions.  He has difficulty handling stress, but he is able to cope with changes in routine.

## LAY EVIDENCE

Plaintiff's wife completed a Third-Party Function Report in which she described plaintiff's daily activities as including reading, watching television, playing games, and listening to music.

She wrote that plaintiff's impairments, however, impede his ability to lift, squat, stand, walk, kneel, climb stairs, and complete routine household chores in a timely manner.  He is only able to walk for 10 minutes before needing to rest for 30 minutes.

She also wrote that he has difficulty with concentration, memory, following instructions, and getting along with others, including his sister and the neighbors.

## MEDICAL EVIDENCE

**Medical Treatment.**

**Good Samaritan Hospital.**

In August 2005, plaintiff was treated for a twisting injury to his right knee, which causes it to lock up. It also causes pain on weight bearing. An MRI revealed osteoarthritic changes with chondromalacia, extensive tearing of the lateral meniscus, a probable tear of the medial meniscus, knee joint effusion, and a cyst and bone island in the femur.

**Medical Examination.**

**Providence/St. Vincent Hospital.**

In July 2007, an MRI of plaintiff's cervical spine and brain revealed "moderate-to-advanced spondylitic and diskogenic changes" at C5-6 and C6-7, causing a mild degree of spinal stenosis and a moderate degree of bilateral neuroforaminal stenosis. The brain scan was unremarkable.

**Tatsuro Ogisu, M.D. - Physical Medicine and Rehabilitation.**

In August 2007, Dr Ogisu examined plaintiff on behalf of Disability Determination Services (DDS) regarding his complaint of head and neck tremors and arthritis in his arms and legs. Plaintiff was cooperative, and made a good effort during the examination.

Dr. Ogisu diagnosed a "minimal tremor" that affected plaintiff's head and neck, as well as a "barely perceptible tremor" in his hands. Plaintiff had degenerative changes in his right knee and "likely" in his left knee.

Dr. Ogisu opined plaintiff had no sitting restrictions. He is able to stand and walk short distances for four hours in an 8-hour work day, lift and carry 25 lbs occasionally and 10 lbs frequently, and frequently use his hands for "light fine and gross manipulation."

Dr. Ogisu further opined plaintiff does not require a walker but he should use a walking stick when he is walking over rough terrain or up steep slopes.

**Terri Robinson, M.D. - Radiologist.**

In June 2008, Terri Robinson, M.D., examined plaintiff on behalf of DDS and found plaintiff had mild-to-moderate narrowing and degenerative changes in the medial/lateral compartments and tibial/lateral spines of both knees. He can stand and walk for two hours in an 8-hour day and climb, balance, stoop, kneel, crouch, fully reach, handle, and manipulate with his fingers frequently. Plaintiff had mild decreased grip strength in his right hand and difficulty holding objects in the palm of that hand. He had a mild tremor in his hands in testing of his range of motion in his cervical spine. His bilateral "quads" strength was slightly decreased. He had no environmental limitations.

**Medical Consultation.**

**Linda L. Jensen, M.D. - Physical Medicine and Rehabilitation
Sharon B. Eder, M.D.- Internal Medicine.**

Dr. Jensen reviewed the medical records on behalf of DDS and concluded plaintiff has the residual functional capacity to lift 20 lbs occasionally and 10 lbs frequently, stand/walk for six hours in an 8-hour work day, push and pull on an unlimited basis, climb stairs and ramps, balance, kneel, crouch, and crawl occasionally, and stoop or kneel frequently.  Dr. Eder reviewed the same medical records and concurred in Dr. Jensen's opinion.

## DISCUSSION

**Plaintiff's Credibility.**

Plaintiff contends the ALJ failed to give clear and convincing reasons for rejecting his testimony regarding the impact of his impairments on his activities of daily living and why his medical treatment was limited.

A plaintiff alleging disability based on subjective symptoms must produce objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996).  The plaintiff need not produce objective medical evidence of the symptoms or their severity.

If the plaintiff produces objective evidence that his underlying impairments could cause his pain and there is no

11 - OPINION AND ORDER

evidence of malingering, the ALJ is required to give clear and convincing reasons for rejecting his testimony as to the severity of his symptoms.  Lingfelter v. Astrue, 504 F.3d 1028, 1036 (9th Cir. 2007).

To determine whether the plaintiff's subjective testimony is credible, the ALJ may rely on (1) ordinary techniques of credibility evaluation such as the plaintiff's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the plaintiff that appears less than candid; (2) an unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the plaintiff's daily activities.  Smolen, 80 F.3d. at 1284 (citation omitted).

The ALJ generally found plaintiff's allegations as to the existence of his physical symptoms "are only partially supported by the record," and that although "plaintiff has severe physical impairments" that may cause some of his alleged symptoms, "his allegations as to the intensity, persistence, and limiting effects of those symptoms are disproportionate and not consistent with the corroborating evidence."  To support that finding, the ALJ noted plaintiff's significant routine daily activities, his failure to make a "serious attempt to obtain treatment" for his alleged impairments, and the lack of medical evidence regarding the severity of his alleged impairments.

Plaintiff asserts these reasons given by the ALJ to reject his testimony regarding the severity of his impairments were not clear and convincing.

**Failure to Seek Medical Treatment.**

Plaintiff points out the ALJ never asked him why he did not seek significant medical treatment. <u>See</u> Social Security Regulation (SSR) 96-7p ("[T]he adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular medical treatment <u>without first considering any explanations that the individual may provide . . . that may explain infrequent or irregular medical visits or failure to seek medical treatment</u>.)." (Emphasis added).  If the ALJ had so inquired, plaintiff would have told him he lacked the funds and/or insurance coverage to pay for such treatment.

On this record, I agree the ALJ should have inquired of plaintiff as to why he did not seek more medical treatment for his physical impairments and, therefore, should not have drawn an unfavorable inference regarding plaintiff's credibility based on his failure to seek more medical treatment.

**Plaintiff's Daily Living Activities.**

The ALJ found plaintiff's daily activities reflect he is able to care for himself, prepare his own meals, perform routine household chores, walk, use public transit, drive, shop, manage

13 – OPINION AND ORDER

his finances, use a computer, and engage in non-exertional recreational activities that are inconsistent with plaintiff's "complaints of disabling symptoms and limitations."

There is no question the record reflects and plaintiff acknowledges he has the ability to perform those tasks to some degree. The ALJ, however, ignored plaintiff's testimony that he avoided heavy lifting and long walks, had difficulty squatting, kneeling, climbing stairs, or otherwise engaging in other activity that required him to use his knees, including swimming, running, hiking, and camping, and that he uses crutches or a wheelchair if his knees hurt.

On this record, I conclude the ALJ's reliance on plaintiff's own description of his daily activities as a basis to support a nondisability finding was unfounded and the record as a whole does not support the ALJ's finding that plaintiff's allegations regarding the severity of his impairments are not credible.

**Lack of Medical Evidence.**

As set forth, plaintiff contends he was unable to seek significant medical care because he lacked either the funds or the medical insurance to do so.

Notwithstanding the dearth of medical evidence, there is objective medical evidence that plaintiff does have severe impairments relating to his knees, as the ALJ acknowledged. A 2005 MRI taken at Good Samaritan Hospital revealed significant

knee problems, including osteoarthritic changes associated with chondromalacia, extensive tearing of the lateral meniscus, a probable tear of the medial meniscus, knee joint effusion, and a cyst and bone island in the femur.

For all of these reason, I conclude the ALJ did not give clear and convincing reasons for rejecting plaintiff's testimony regarding the severity of his knee impairments.

**Lay Witness Testimony.**

Plaintiff contends the ALJ failed to evaluate adequately his wife's lay evidence.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001).

Plaintiff's wife wrote that plaintiff's knee impairments cause him difficulty squatting, standing, walking, kneeling, climbing stairs, and completing routine household chores in a timely manner. He is only able to walk for 10 minutes before needing to rest for 30 minutes.

She also wrote that he has difficulty with concentration, memory, following instructions, and getting along with others, including his sister and the neighbors.

The ALJ refers obliquely to this evidence in his opinion solely by referring to the exhibit number for it.  The ALJ, however, dismisses the evidence contained in that exhibit in general because, in his opinion, the record as a whole reflects plaintiff engaged in daily activities that were inconsistent with the limitations described  by plaintiff's wife in her statement.

As noted above, there is medical evidence in the record to justify a finding that plaintiff has severe knee impairments. Moreover, the lay evidence of plaintiff's wife supports a finding that plaintiff's knee impairments in fact interfere to some extent with his activities of daily living.

Accordingly, I conclude the ALJ gave no germane reason for effectively ignoring that evidence.

**Examining Physician Evidence.**

Plaintiff contends the ALJ erred in failing to give specific and legitimate reasons for rejecting medical opinions offered by examining physicians Tatsuro Ogisu, M.D. and Terri Robinson, M.D.

"To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." Bayless v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005), citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995).  "If a treating or

16 – OPINION AND ORDER

examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Id.  In "evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings." Id, citing Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001).

**Tatsuro Ogisu, M.D.**

Dr. Ogisu opined inter alia that plaintiff is able to stand and walk short distances for four hours in an 8-hour work day, and frequently use his hands for "light and fine manipulation." The walking limitations assigned by Dr. Ogisu were plainly associated with plaintiff's objectively identified knee impairments.

The ALJ, however, refused to give "significant weight" to Dr. Ogisu's standing and walking limitations because they were "not well supported by medically acceptable diagnostic studies."

As set forth above, there is substantial medical evidence in the record that plaintiff has severe knee impairments.  The ALJ's finding to the contrary, and his refusal to adopt Dr. Ogisu's workplace limitations based on those knee impairments, is not supported by substantial evidence in the medical record.

17 - OPINION AND ORDER

**Terri Robinson, M.D.**

Dr. Robinson opined plaintiff is able to stand and walk for two hours in an 8-hour day.  As with Dr. Ogisu, that limitation is plainly associated with plaintiff's knee impairments.

The ALJ rejected Dr. Robinson's opinion because he concluded Dr. Robinson's objective findings did not support the workplace limitations she attributed to plaintiff.  For the same reasons stated above as to Dr. Ogisu, I conclude the ALJ's reason for rejecting that opinion is not supported by the medical evidence.

**Other Issues.**

**Neuropsychological Examination.**

Plaintiff contends the ALJ erred in failing to develop the medical record by obtaining a neuropsychological evaluation of plaintiff before making a finding that plaintiff's head tremors were not a severe impairment.  I disagree.

The ALJ "has an independent duty to fully and fairly develop the record and to assure that the claimant's interests are considered." Tonapetyan v. Halter, 242 F.3d 1144, 1151 (9th Cir. 2001)(quoting Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996)).  "The ALJ should not be "a mere umpire during disability proceedings," but must "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." Widmark v. Barnhart, 454 F.3d 1063, 1068-69 (9th Cir. 2006), citing Higbee v. Sullivan, 454 F.3d 1063, 1068-69 (9th Cir. 1992).

"Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers a duty to conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150.

The existing medical record reflects that the tremors plaintiff suffers in his head (and in his hands) are mild and there is no substantial evidence they significantly impede his ability to engage in substantial gainful activity.

On this record, I conclude the ALJ did not err in failing to obtain a neuropsychological evaluation of plaintiff related to those tremors.

**Past Relevant Work.**

Plaintiff contends the ALJ failed to make sufficient factual findings that plaintiff is able to perform his past relevant work as a data entry clerk and/or mail clerk.

"At step four, claimants have the burden of showing that they can no longer perform their past relevant work. 20 C.F.R. 404.1520(e) and 416.920(e)." Pinto v. Massanari, 249 F.3d 840, 844 (9th Cir. 2001). "Once they have shown this, the burden at step five shifts to the Secretary to show that, taking into account a claimant's age, education, and vocational background, [h]e can perform any substantial gainful work in the national economy. 20 C.F.R. § 404.1520(f) and 416.920(f)." Id.

19 – OPINION AND ORDER

"Although the burden of proof lies with the claimant at step four, the ALJ still has a duty to make the requisite factual findings to support his conclusion," by making "specific findings as to the claimant's residual functional capacity, the physical and mental demands of the past relevant work, and the relation of the residual functional capacity to the past work." Id.

For all the reasons set forth above, I conclude the ALJ improperly rejected or ignored medical evidence and lay witness evidence regarding the severity of plaintiff's knee impairments and his ability to maintain concentration, follow instructions, and get along with others.

Accordingly, on this record, I conclude this matter should be remanded to the Commissioner for further proceedings.

### NATURE OF THE REMAND

The proceedings on remand should include a further medical examination of plaintiff's knees, and a psychological evaluation of plaintiff's ability to maintain concentration, persistence, and pace in the workplace for the purposes of (1) determining whether plaintiff is able to perform his past relevant work as a data entry clerk and/or mail clerk, and if not, (2) determining whether there is other work available in the national economy that he can perform in light of his physical  and psychological impairments.

## CONCLUSION

For the reasons set forth above, the Commissioner's final decision denying benefits to plaintiff is **REMANDED** to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) for further proceedings as set forth above.

IT IS SO ORDERED.

DATED this 29 day of September, 2011.


 /s/ Malcolm F. Marsh
MALCOLM F. MARSH
United States District Judge

21 - OPINION AND ORDER